**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**ROY F. HILLBERRY, II**

       **Petitioner,**

v.                              **Case No.:  2:13-cv-21893**

**DAVID BALLARD, Warden,
Mount Olive Correctional Complex**

       **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1), and Respondent's Motion for Summary Judgment. (ECF No. 10). This case is assigned to the Honorable Thomas E. Johnston, United States District Judge, and was referred to the undersigned United States Magistrate Judge by Standing Order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be **DENIED**, that Respondent's Motion for Summary Judgment be **GRANTED**, and that this action be **DISMISSED**, with prejudice, and removed from the docket of the Court.

I.   <u>**Procedural History**</u>

In August 2012, Petitioner Roy F. Hillberry, II, ("Hillberry") was convicted of robbery in the first degree and of a third or subsequent offense felony in the Circuit

Court of Marion County, West Virginia.[1] (ECF No. 10-1 at 2). As a result of these convictions, Hillberry was sentenced to life in prison. (*Id.*) He is currently housed at the Mount Olive Correctional Complex ("MOCC"), where he purportedly has been in the prison's administrative segregation unit since his arrival. (ECF No. 14 at 3). Prior to serving his sentence at MOCC, Hillberry was confined at North Central Regional Jail in Greenwood, West Virginia, where he alleges he was assaulted and battered by a correctional officer named Elder. (*Id.* at 2). Hillberry asserts that he was assigned to administrative segregation both at the regional jail and at MOCC based on this incident, although he never received an incident report or violation notice regarding his interaction with Elder while at the jail. (*Id.*)

Hillberry's placement in the administrative segregation unit at MOCC began at intake on August 14, 2012, and as of June 5, 2014, Hillberry allegedly remained in administrative segregation. (ECF No. 13 at 2, 12; ECF No. 14-1 at 6). Hillberry was informed at intake that he was being placed in administrative segregation based on "available information indicat[ing] that [he was] dangerous to the safe and secure operation of the institution ... [because he] assaulted staff/inmates while at regional jail." (ECF No. 14-1 at 6). On August 16, 2012, a hearing was held by the administrative segregation committee to determine whether Hillberry should remain in segregation. (ECF No. 14 at 3; ECF No. 14-1 at 6). Hillberry requested inmate representation at the hearing, but his request was denied. (ECF No. 14 at 3). Hillberry also complains that because the hearing was based on incidents that occurred at the North Central Regional Jail, he was not given the opportunity to call witnesses, nor was he permitted to cross-

---

[1] The order of conviction for both counts was entered on August 29, 2012, although Hillberry was initially convicted by a jury of the armed robbery count in April 2012, and then subsequently convicted of the habitual offender count. *State v. Hillberry*, 754 S.E.2d 603, 607 (W. Va. 2014).

examine the witness that presented evidence against him related to the altercation with correctional officer Elder. (*Id.*) At the end of the hearing, Hillberry received an initial hearing recommendation suggesting he remain in segregation. (*Id.*) On August 19, 2012, Respondent adopted that recommendation. (*Id.*) According to Hillberry, that same day he completed an appeal form requesting review of Respondent's decision and sent that to the Commissioner of the West Virginia Division of Corrections ("Commissioner"). (*Id.* at 4). Hillberry claims that he never received a response from the Commissioner. (*Id.*) However, he later received a copy of an October 22, 2012 initial classification hearing form from the West Virginia Division of Corrections Diagnostic and Classification Unit wherein Hillberry was assigned a level five custody classification by the unit classification committee. (ECF No. 14-1 at 22). The committee determined that Hillberry would be housed "at MOCC in Quilliams II until Released from Segregation." (*Id.*)

On July 19, 2013, Hillberry filed his first petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that the conditions in administrative segregation, specifically the amount of recreation time and the quality of the food, were unsatisfactory, and the inmates in administrative segregation were treated with deliberate indifference to their living conditions, subjecting them to atypical hardships and physical and mental deterioration. *Hillberry v. Ballard*, No. 2:13-cv-20699, 2014 WL 4387487, at *1 (S.D.W.Va. Apr. 24, 2014). Hillberry also complained that officials were wrongfully using the incident with Elder to determine his custody level at MOCC. *Id.* For relief, Hillberry requested his immediate release from solitary confinement and asked that he "be either placed in general population at MOCC or transferred to Northern Correctional Complex or Huttonsville Correctional Complex." *Id.* Hillberry further sought an order compelling MOCC to comply with "ACA standards" on the

administrative segregation unit, as well as to provide daily recreation and hot meals to the inmates. *Id.*

Hillberry's first petition was assigned to the Honorable Thomas E. Johnston, United States District Judge, and was referred to the undersigned for proposed findings of fact and recommendations for disposition. On October 7, 2013, the undersigned issued an order notifying Hillberry that the petition did not state claims cognizable under 28 U.S.C. § 2241, as Hillberry challenged the conditions of his confinement rather than its validity or duration. Accordingly, Hillberry was instructed to file a complaint pursuant to 42 U.S.C. § 1983, and either pay the filing fee or file an application to proceed *in forma pauperis. Hillberry*, 2014 WL 4387487 at *2. The Clerk was directed to provide the appropriate forms and instructions to Hillberry, and he was notified that failure to file the necessary documents might result in a recommendation of dismissal. *Id.* By that time, Hillberry had filed the instant action—a second habeas petition that again asserted his claim of "atypical hardships" and also alleged due process violations related to his placement in administrative segregation. (ECF No. 1). Hillberry failed to comply with the order; therefore, in April 2014, the undersigned filed proposed findings of fact and a recommendation that the first petition be dismissed, without prejudice. *Id.* at *2-3. Hillberry did not file objections to the findings of fact or the recommendation. Accordingly, the presiding District Judge adopted the facts and recommendation, and dismissed Hillberry's first habeas petition in September 2014. *Hillberry v. Ballard*, No. 2:13-cv-20699, 2014 WL 4387510, at*1 (S.D.W.Va. Sept. 3, 2014).

In the instant proceeding, Hillberry raises four claims:

1.    The West Virginia Division of Corrections ("WVDOC") "has no right to punish [Hillberry] for any act that may or may not have happened" prior to his confinement to the WVDOC. (*Id.* at 6).

2.    MOCC violated Hillberry's due process rights at the administrative segregation hearing by failing to allow him to call witnesses, by precluding him from cross-examining witnesses, and by failing to allow him the opportunity to review the facts against him in preparation for the hearing. (*Id.* at 7).

3.    Hillberry was never charged with a rule violation and never had a rule violation hearing at the regional jail related to "the alleged incident." (*Id.*)

4.    MOCC/WVDOC "has no right or lawful authority to use any alleged incident" prior to Hillberry's sentencing to "punish or confine" him. (*Id.* at 8).

For relief, Hillberry requests that he be released from administrative segregation into the general population of MOCC, or that he be transferred to Northern Correctional Complex or Huttonsville Correctional Complex. (*Id.*)

On April 23, 2014, the undersigned ordered Respondent to answer the habeas petition. (ECF No. 7). On May 23, 2014, Respondent filed his answer along with a motion for summary judgment. (ECF Nos. 9 & 10). In the motion, Respondent characterizes Hillberry's second habeas petition as a petition under section 2254, rather than one under section 2241.[2] (ECF No. 10 at 1). Respondent contends that summary judgment is appropriate because Hillberry's claims are procedurally defaulted, and Hillberry has failed to assert a cognizable federal claim. (*Id.* at 1). On June 12, 2014, Hillberry filed a brief in opposition to the motion for summary judgment, an affidavit, and a statement of disputed factual issues. (ECF Nos. 13, 14, & 15). In his responsive brief, Hillberry also characterizes his second habeas petition as a petition filed pursuant to section 2254. (ECF No. 13 at 1, 5). Hillberry argues that Respondent's motion for summary judgment should be denied, because Hillberry utilized the correct administrative procedures to exhaust his claims. (*Id.* at 6). He also maintains that his

---

[2] Respondent does the same in his brief. (ECF No. 11 at 1, 9).

due process rights were violated when he was placed in administrative segregation, and he insists that the conditions of administrative segregation are "atypical" and pose "significant hardships" on him. (*Id.* at 7, 11). Thereafter, Respondent was given an opportunity to file a reply memorandum, but failed to do so. Accordingly, the motion for summary judgment is now fully briefed and ready for resolution.

## II.   <u>Standard of Review</u>

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure "applies to habeas proceedings." *Brandt v. Gooding*, 636 F.3d 124, 132 (4th Cir. 2011) (quoting *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991)). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact or facts are material if they constitute a legal defense, or if their existence or nonexistence might affect the result of the action, or if the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail." Charles Alan Wright, Arthur R. Miller &, Mary Kay Kane, *Federal Practice and Procedure*: *Civil* § 2725 (3d ed. 2005); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (holding that a "material fact" is a fact that might affect the outcome of a party's case under the applicable substantive law). On the other hand, a fact is not material when it is of no consequence to the outcome, or is irrelevant in light of the governing law. *Id.* In addition, only genuine disputes over material facts "will properly preclude the entry of summary judgment." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A dispute is "genuine" when "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th

Cir. 2001) (citing *Anderson*, 477 U.S. at 248).

The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact is present. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Once the moving party has met its burden, the non-moving party must affirmatively respond with specific evidence "showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (citing *Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984)). Instead, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c).

In considering a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. When making this determination, the court shall view the evidence in the light most favorable to the nonmoving party and draw from it all permissible inferences in that party's favor. *Diebold, Inc.*, 369 U.S. at 655; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587–88. Consequently, motions for summary judgment impose a heavy burden on the moving

party; for, it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990).

Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. Thus, although the facts and permissible factual inferences will be construed in a manner most advantageous to the party opposing the motion, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249-50).

## III.   Discussion

### A. Section 2241 versus Section 2254

Preliminary, the undersigned shall address what type of petition is properly before the Court. As noted above, Hillberry filed a habeas petition pursuant to 28 U.S.C. section 2241, but in his responsive brief, subsequently labeled his petition as one for relief under section 2254. (ECF No. 1 at 1; ECF No. 13 at 1, 5). Respondent similarly characterized Hillberry's petition as seeking a writ of habeas corpus pursuant to section 2254. (ECF No. 10 at 1; ECF No. 11 at 1, 9).

Federal Courts of Appeals disagree as to whether a petition under 28 U.S.C. section 2241 may be filed by a state prisoner, or whether section 2254 is the "'exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction.'" *See Gregory v. Coleman*, 218 F.App'x 266, 267 n.* (4th Cir. 2007) (quoting *White v. Lambert*, 370 F.3d 1002, 1005 (9th Cir. 2004)). While the majority of

jurisdictions finds the use of section 2254 mandatory for all federal habeas actions filed by state prisoners in custody pursuant to a state court judgment, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has yet to take a definitive position on the issue. *Id.*; *see also Smart v. South Carolina Dep't of Prob., Parole, and Pardon Servs.*, No. 2:13-03621, 2014 WL 3359327, at *4 n.6 (D.S.C. July 9, 2014). Some courts within the Fourth Circuit have agreed with the majority view that a petition under section 2254 is indeed the only procedural avenue by which a state prisoner may pursue a federal habeas case. *See, e.g., Gregory v. McBride*, No. 5:02-00472, Memorandum Opinion, Dkt. No. 57, at 8-9 (S.D.W.Va. Sept. 29, 2005) (holding, in alternative, that "persons in custody pursuant to a state judgment must bring their challenges to administrative actions under section 2254 and not section 2241.");[3] *see also Eaddy v. Pate*, No. 5:13-cv-2932, 2014 WL 368649, at *5 (D.S.C. Feb. 3, 2014) (recognizing that some judges within the District of South Carolina have adopted majority approach to the issue); *Gutierrez v. Florida State,* PWG-13-35, 2013 WL 264533, at *2 (D.Md. Jan. 18, 2013) (recognizing majority view is that state prisoners must use 2254 for habeas claims); *Trisler v. Mahon*, No. 3:09cv167, 2010 WL 772811, at *3 (E.D. Va. Mar. 3, 2010) (noting that courts in the Eastern District of Virginia had concluded that section 2254 petition was "appropriate procedural vehicle" for prisoner in custody pursuant to state court judgment to challenge execution of sentence). Other courts have sidestepped the issue when characterization of the petition was not dispositive of the matter. *See Thomas v. Drew*, No. 5:10-cv-00180, 2011 WL 867487, at *4 n.1 (S.D.W.Va. Mar. 14, 2011) (declining to parse petitioner's claims to determine which statute applied to each claim because analysis of claims did not depend on difference between sections 2254

---

[3] On appeal, the Fourth Circuit noted that district court's procedural ruling was "debatable," but affirmed dismissal of the petition on other grounds. *Gregory*, 218 F. App'x at 267.

and 2241); *Reeves v. Herron*, No. 1:09CV287, 2010 WL 3945115, at *2 n.1 (M.D.N.C. Oct. 6, 2010) (declining to analyze the issue as it was not dispositive of the case).

Here, the question of whether Hillberry may bring a section 2241 petition need not be answered because the procedural vehicle is not dispositive. *See Reeves*, 2010 WL 3945115, at *2 n.1. There is no indication that Hillberry previously filed a section 2254 petition, which would bar any successive section 2254 petitions.[4] 28 U.S.C. § 2244(a)-(b). Furthermore, there is no reason to believe that Hillberry filed his petition under section 2241 to avoid procedural requirements governing petitions brought under section 2254. *Cf. Catlett v. Ballard*, No. 2:10-cv-00850, 2011 WL 320916, at *3 (S.D.W.Va. Jan. 28, 2011) ("As a practical matter, the Court will not permit Petitioner to circumvent the procedural requirements governing section 2254 petitions by simply styling his petition as one brought under § 2241."). The sole procedural argument raised by Respondent relates to procedural default, a concept that applies equally to both 2241 and 2254 petitions. *See, e.g.*, *McClung v. Shearin*, 90 F. App'x 444, 446 (4th Cir. 2004). Moreover, if this petition is construed as a section 2254 petition, Hillberry would most likely be foreclosed from attacking his underlying convictions in the future under the successive petition rules in 28 U.S.C. § 2244(a)-(b), which seems to be an unduly harsh consequence under the present circumstances. Accordingly, for the purposes of the proposed findings and recommendations in this case, Hillberry's petition shall be accepted as presented and analyzed under section 2241.

## B. Procedural Default

Before turning to the merits of Hillberry's claims, Respondent's contention that

---

[4] While Hillberry has previously filed a section 2241 petition, the Court dismissed that petition without prejudice, and the PF&R, which was adopted by the Court, essentially reserved ruling on the claims in the second petition.

Hillberry's claims have been procedurally defaulted should also be addressed. *See Lambrix v. Singletary*, 520 U.S. 518, 524, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997) ("Our opinions ... certainly suggest that the procedural-bar issue should ordinarily be considered first."). Respondent argues that Hillberry's claims are procedurally defaulted because he failed to contest the results of the administrative segregation hearing in an appropriate manner. (ECF No. 11 at 5). Specifically, Respondent asserts that Hillberry failed to use the proper procedure in appealing the decision of the administrative segregation committee, and his attempt at an appeal by filing a grievance in July 2013 was untimely. (*Id.*) Respondent relies on WVDOC Policy Directive 325.00, Rule 7.01, which provides that a prisoner found guilty of a rule violation must file a written appeal to the warden within fifteen days after receiving the hearing report for the rule violation.[5] (*Id.* at 5-6). Hillberry counters that the requirements of Policy Directive 325.00 do not apply to him, because he was never charged with a rule violation. Instead, Policy Directive 326.01, which applies to administrative segregation decisions, is the relevant guideline. (ECF No. 13 at 6). Hillberry insists that he followed the requirements for an appeal under Policy Directive 326.01, but never received a response from the Commissioner. (*Id.* at 3, 6-7). For that reason only, he filed the July 2013 grievance, contesting his segregation, as a "last resort." (*Id.* at 6).

As set forth above, Hillberry was placed in administrative segregation when he arrived at MOCC on August 14, 2012 based on "available information indicat[ing] that [he was] dangerous to the safe and secure operation of the institution ... [because he] assaulted staff/inmates while at regional jail." (ECF No. 14-1 at 6). On August 16, 2012, a hearing was held by the administrative segregation committee to determine whether

---

[5] Policy Directive 325.00 is found at the following internet link provided by the Respondent: http://www.wvdoc.com/wvdoc/LinkClick.aspx?fileticket=P9SduoPy1aM%3D&tabid=104&mid=156.

Hillberry should remain in segregation, and it was recommended that he should. (ECF No. 14 at 3; ECF No. 14-1 at 6). Three days later, Hillberry received a decision from Respondent upholding the committee's recommendation. (ECF No. 14 at 3). According to his affidavit, Hillberry appealed that decision to the Commissioner on the same day, but never received a response. (ECF No. 14 at 4; ECF No. 13-1 at 2). Hillberry has attached an appeal form to his responsive brief that he claims was mailed on August 19, 2012.[6] (ECF No. 13-1 at 2). In that appeal, Hillberry raised the following issues: "(1) At the time of the alleged incident that [he] was placed on ad-seg for [he] was not yet sentenced to a term of confinement in WVDOC. (2) [He] was given no chance to call witnesses. (3) [He] was never charged with a rule violation for the alleged incident." (*Id.*) The section of the appeal form designated for the Commissioner's response is blank. (*Id.*)

Hillberry then filed a grievance on July 7, 2013 making many due process claims similar to those in his habeas petition.[7] (ECF No. 13-1 at 3-4). The Unit Manager, Sergeant Shawn Ramsey, denied the grievance on July 12, 2013, noting that Hillberry was advised during the administrative segregation hearing that he had five days to appeal the decision as to segregation and he did not appeal within those five days. (*Id.* at 3). Hillberry appealed Sergeant Ramsey's denial to Respondent that same day. (*Id.*) On July 19, 2013, Hillberry's grievance was again denied because "issues related to

---

[6] The appeal form was a standardized form attached to the July 2006 version of Policy Directive 326.01. (ECF No. 13-1 at 2). There are no indications on the form that it was ever received by the Commissioner. There is a stamp on the form that states "Approved for Inmate Viewing." (*Id.*) Hillberry did not attach the appeal form to his habeas petition. (ECF No. 1).

[7] The record from Hillberry's first section 2241 proceeding shows that he also filed grievances complaining about placement in the "quality of life" program, placement in administrative segregation, and the conditions of segregation in September 2012 and June 2013. Pet. for Writ of Habeas Corpus, *Hillberry v. Ballard*, No. 2:13-cv-20699 (S.D.W.Va. July 19, 2013), ECF No. 1-1 at 1-4. In response to his September 2012 grievance, the Unit Manager wrote: "The quality of life program is not about punishment. You were offered an appeal for when [*sic*] placed on administrative segregation." *Id.* at 1.

administrative segregation are not addressed through the grievance procedures." (*Id.*) Hillberry then appealed to the Commissioner on July 23, 2013, and it appears that appeal was denied by the Commissioner because of "time frame." (*Id.*)

"Federal courts may not hear a [federal habeas] claim if a state court disposed of the claim on adequate and independent state-law grounds, unless the petitioner can show cause and prejudice for, or a fundamental miscarriage of justice resulting from, failure to comply with the applicable rule." *Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009). Where the petitioner cannot show cause and prejudice or a fundamental miscarriage of justice, the claim is deemed procedurally defaulted. *Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006). A rule is adequate if it is regularly or consistently applied by the state court ... and is independent if it does not depend on a federal constitutional ruling." *Id.* (internal citations and markings omitted) (ellipsis in original). The procedural default rule applies to prisoners seeking to challenge the results of administrative proceedings in prison through federal habeas petitions. *See, e.g., Tiffin v. Lewisburg*, ___ F. App'x ___, 2014 WL 5488380, at *1 (3rd Cir. Oct. 31, 2014); *Wilson-El v. Finnan*, 263 F. App'x 503, 506 (7th Cir. 2008); *Nigro v. Sullivan*, 40 F.3d 990, 993 (9th Cir. 1994); *Burgess v. Atkinson*, No. 8:13-cv-01178, 2013 WL 5670945, at n.2 (D.S.C. Oct. 17, 2013). In other words, if a prisoner fails to comply with the established administrative requirements for objecting to an administrative decision made by prison officials, and the prisoner's objection is later disposed of based on the failure to adhere to those requirement or relief is no longer available through the administrative process because of the prisoner's failure, then the claim cannot be reviewed by a federal court.

Here, Hillberry is correct that the policy directive applicable to his situation is Policy Directive 326.01 as that directive relates specifically to administrative segregation

hearings. Moreover, the record does not demonstrate that Hillberry was ever charged with a rule violation before being confined in administrative segregation, (ECF No. 13-1 at 6), which is a prerequisite to the applicability of Policy Directive 325.00. Policy Directive 326.01 provides the procedures to be utilized by the committee in administrative segregation hearings and the process by which the administrative segregation committee's recommendations may be appealed. (*Id.* at 9-12). The directive requires a prisoner to appeal a decision of the warden upholding the committee's recommendation to the Commissioner within five days of receiving the warden's decision. (*Id.* at 12). Hillberry has attested in his affidavit that he appealed Respondent's decision to the Commissioner within the requisite five-day period. (ECF No. 14 at 4). As noted above, Hillberry has also provided the Court with the appeal form that he asserts he completed and sent to the Commissioner on August 19, 2012. (ECF No. 13-1 at 2). Respondent does not refute Hillberry's assertions. Instead, Respondent relies on the denial of Hillberry's July 2013 grievance as the basis for the procedural default argument. (ECF No. 11 at 5-6).

In general, "[a] federal habeas court 'does not have license to question a state court's finding of procedural default' or to question 'whether the state court properly applied its own law.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Barnes v. Thompson*, 58 F.3d 971, 974 n.2 (4th Cir. 1995)). *But see Cone v. Bell*, 556 U.S. 449, 466-69, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009) (questioning and ultimately disagreeing with state court's application of procedural bar because state court relied on false premise in applying procedural rule); *Jalowiec v. Bradshaw*, 657 F.3d 293, 303 (6th Cir. 2011) (holding that state court's enforcement of procedural bar was "erroneous" and therefore represented "no obstacle" to federal court review of claim's merits). The

procedural default rule is "grounded in concerns of comity and federalism." *Coleman v. Thompson*, 501 U.S. 722, 730, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). The interests supporting the procedural default rule in the typical case, specifically "'finality, comity, and conservation of scare judicial resources,'" equally underlie the application of the procedural default rule in the prison administrative process. *See Sharpe*, 593 F.3d at 377 (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)) (describing interests underlying procedural default doctrine in typical habeas case). As such, a federal habeas court should refrain from questioning prison officials' application of the regulations that govern their administrative proceedings. However, that deference is only warranted where the officials actually render a decision by applying those regulations. In this case, Hillberry claims, *and Respondent does not dispute*, that Hillberry appealed Respondent's decision to the Commissioner and never received a response. Consequently, Hillberry was deprived of the opportunity to have his appeal decided on the merits after following the procedure required by Policy Directive 326.01. Importantly, prison officials never addressed Hillberry's August 19, 2012 appeal, let alone applied any type of procedural rule to dismiss the appeal. Instead, in July 2013, prison officials declined to review the due process issue on procedural grounds when Hillberry raised it again in a grievance. Respondent now wishes to disregard Hillberry's initial appeal under Policy Directive 326.01, and rely solely on the subsequent decision in the grievance action to bar the Court from considering Hillberry's due process claims.

To the extent that Respondent contends that the procedural rule was applied to Hillberry's due process claims, albeit in July 2013, it would seem unjust to permit prison administrators to ignore a timely appeal by an inmate and then, in a later administrative proceeding, employ a timing-related procedural rule to bar consideration of issues

similar to those raised in the appeal ignored by administrators. Essentially, a prisoner would be punished for persisting in asserting his rights because, without the later grievance, no procedural impediment would stand in the way of his access to the federal courts. Allowing such a practice would encourage prison officials to delay due process claims in the hope that other prisoners would make a similar mistake. The record indicates that Hillberry fairly presented the Commissioner with an opportunity to decide his claims in accordance with the applicable policy directive, which complies with the very essence of the procedural default doctrine. *See Coleman*, 501 U.S. at 732 (recognizing that procedural default doctrine exists to prevent habeas petitioners from depriving state courts of opportunity to address claims first). Therefore, because Respondent has not contested Hillberry's claim in his affidavit that he filed an appeal of Respondent's administrative segregation decision in a timely manner and never received a response, Hillberry's present claims are not procedurally defaulted.[8] *Cf. Winston v. Kelly*, 592 F.3d 535, 555 (4th Cir. 2010) ("When a state court refuses to opine on the merits of a claim properly presented to it, exhaustion is satisfied.").

### C. Recognition of Hillberry's Claims in a Habeas Proceeding

Respondent seems to concede that, in general, a prisoner may pursue a writ of habeas corpus where placement in administrative segregation violates federal law. (ECF No. 11 at 8). However, Respondent asserts that Hillberry's claim does not satisfy that standard. (*Id.* at 9). Before proceeding to the merits of Hillberry's claims, the issue of whether his claims can be brought in a habeas proceeding merits some further discussion.

---

[8] Respondent has not raised any other affirmative defense in this action. (ECF No. 9 at 1).

Reviewing Hillberry's responsive brief and affidavit, his claims can be divided into two main categories: (1) due process claims and (2) conditions of confinement claims.[9] Beginning with the latter claims, the issue of whether a prisoner may challenge the conditions of confinement in a habeas proceeding has not been definitively resolved by the Supreme Court. *Compare Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973) (recognizing that habeas corpus may be available to challenge prison conditions), *and Wilwording v. Swenson*, 404 U.S. 249, 249-51, 92 S. Ct. 407, 30 L. Ed. 2d 418 (1971) (recognizing challenges to prison "living conditions and disciplinary measures" are "cognizable in federal habeas corpus"), *and Johnson v. Avery*, 393 U.S. 483, 89 S. Ct. 747, 21 L. Ed. 2d 718 (1969) (permitting prisoner to bring habeas corpus action challenging prison regulation prohibiting prisoners from providing legal assistance to other prisoners), *with Muhammad v. Close*, 540 U.S. 749, 752 n.1, 124 S. Ct. 1303, 158 L. Ed. 2d 32 (2004) (noting that Supreme Court had "never followed the speculation in [*Preiser*] that a prisoner subject to 'additional and unconstitutional restraints' might have a habeas claim independent of § 1983") (quoting *Preiser*, 411 U.S. at 499), *and Bell v. Wolfish*, 441 U.S. 520, 527 n.6, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of the confinement itself."); *see also Aamer v. Obama*, 742 F.3d 1023, 1031-32 (D.C. Cir. 2014) (asserting that Supreme Court had "reversed course" since *Johnson* and *Wilwording* to leave question open).

The Fourth Circuit, relying on *Johnson* and *Wilwording*, has held that "there is federal habeas corpus jurisdiction over the complaint of a federal prisoner who is

---

[9] Hillberry does not complain about the conditions of his confinement in his habeas petition other than describing them as "torturous." (ECF No. 1 at 8).

challenging not the validity of his original conviction, but the imposition of segregated confinement without elementary procedural due process and without just cause." *McNair v. McCune*, 527 F.2d 874, 875 (4th Cir. 1975); *see also Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) ("If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, *or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation*—then *habeas corpus* is his remedy.") (emphasis added); *Streeter v. Hopper*, 618 F.2d 1178, 1181 (5th Cir. 1980) (stating claim seeking release from imposition of administrative segregation without due process is cognizable in habeas). Citing *McNair*, the Fourth Circuit has distinguished between claims concerning due process or just cause, which are cognizable in habeas proceedings, and claims concerning the conditions of confinement, which are not. *Varela v. Whalen*, 946 F.2d 888, 1991 WL 213515, at *1 (4th Cir. Oct. 23, 1991) (unpublished table decision).

In addition, courts within this district have unequivocally held that straight forward conditions of confinement claims are not cognizable in habeas proceedings. *Brown v. Zeigler*, No. 5:12-cv-00178, 2013 WL 4500473, at *6-7 (S.D.W.Va. Aug. 20, 2013); *Daniel v. Craig*, Nos. 5:07-cv-00465 & 5:07-cv-00577, 2008 WL 644883, at *2 (S.D.W.Va. Mar. 7, 2008); *Berry v. McBride*, No. 5:05-cv-01134, 2006 WL 2861077, at *1 (S.D.W.Va. Oct. 5, 2006). Accordingly, to the extent Hillberry's claims in his responsive brief and affidavit relate to the conditions of his confinement, those claims are more appropriately raised in a proceeding under 42 U.S.C. § 1983.[10] However,

---

[10] That is not to say, however, that the conditions of administrative segregation are not relevant to Hillberry's due process claims. As discussed below, the severity of the conditions of his confinement is an integral piece of the due process analysis.

Hillberry's due process claims are cognizable in this proceeding. *McNair*, 527 F.2d at 875; *see also Varela*, 1991 WL 213515, at *1. With that, the undersigned turns to the merits of Hillberry's claims.

### D. Due Process

Although Hillberry presents four claims in his habeas petition, there is only one overarching claim of constitutional dimension—Hillberry's allegation that his due process rights were violated when he was assigned to administrative segregation by the MOCC administrative segregation committee. In his petition, Hillberry asserts that his due process rights were violated in two basic ways: (1) the administrative segregation committee based its decision on an "alleged incident" that occurred prior to his confinement at MOCC, and (2) the administrative segregation committee did not allow him to call witnesses, cross-examine witnesses, or "review the facts" prior to the hearing.[11] (ECF No. 1 at 6-8). Respondent argues that Hillberry has not "asserted a liberty interest that can sustain his petition for writ of habeas corpus" because he has not alleged that placement in administrative segregation has exceeded his original sentence or that placement in administrative segregation constitutes an atypical or significant hardship beyond that associated with administrative segregation in general. (ECF No. 11 at 9).

Hillberry counters that Respondent violated Policy Directive 326.01 at the administrative segregation hearing by not allowing him to receive assistance from an inmate representative, not allowing him to call witnesses, and not allowing him to cross-

---

[11] To the extent that Hillberry contends that Respondent should not have been permitted to use his behavior prior to his incarceration at MOCC during his administrative segregation hearing, that claim fails. Common sense dictates that prison officials should be permitted to use inmates' past behavior as an indicator in making assessments that directly impact the safe and efficient operation of the institution. *See Shoats v. Horn*, 213 F.3d 140, 146 (3rd Cir. 2000).

examine witnesses. (ECF No. 13 at 9). Hillberry complains that he has been confined to administrative segregation at MOCC since August 2012 without any review of his administrative segregation status. (*Id.* at 10). Furthermore, Hillberry asserts "martial law" has been declared by Respondent and under that declaration, corrections officers are permitted to use "riot control weaponry" on inmates in segregation who are not a threat to others or themselves.[12] (*Id.* at 11). Hillberry claims that corrections officers have sprayed him with "chemical agents under martial law as a punishment." (ECF No. 14 at 5). In addition, Hillberry argues that conditions in administrative segregation are atypical because he is not allowed outdoor recreation time and indoor recreation only occurs in recreation "cages" without room for "meaningful exercise," plumbed commodes, and drinking fountains. (ECF No. 14 at 5-6). Moreover, Hillberry complains that he is in "solitary confinement at all times." (*Id.* at 6). Finally, Hillberry fears what will happen if he is placed on a "behavioral management program" while in administrative segregation. (*Id.*) He worries that he will be placed in a "strip-cell" with only his underwear and a blanket and that he will be forced to sleep "on a cold steel bunk without a mat." (*Id.*) He also anticipates that while on a "behavioral management program" he will not be permitted to send mail, use the telephone, or possess religious materials. (*Id.*)

The Due Process Clause of the Fourteenth Amendment mandates that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Imprisonment for a crime does not completely divest a person of due process protections. *Wolff v. McDonnell*, 418 U.S. 539, 555-56, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). "In order to prevail on either a procedural or substantive due

---

[12] Hillberry attaches to his brief a request form answered by a lieutenant at MOCC confirming that "martial law is a condition that MOCC utilizes." (ECF No. 14-1 at 5).

process claim, inmates must first demonstrate that they were deprived of life, liberty, or property by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (markings omitted). Hillberry claims that he was deprived of a liberty interest by Respondent's action of placing him in administrative segregation. Although the "Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement ... a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations." *Wilkinson v. Austin*, 545 U.S. 209, 221-22, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (citations omitted). "'States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless *imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*'" *Beverati,* 120 F.3d at 502 (quoting *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)) (emphasis in original). Thus, the question becomes whether Hillberry's "confinement in administrative segregation impose[s] such an atypical hardship on [him] vis a vis ordinary prison life that [he] possesse[s] a liberty interest in avoiding it." *Id.* at 502-03.

The Supreme Court has recognized that post-*Sandin*, the Federal Courts of Appeals "have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," largely owing to the difficulty of discerning the "ordinary incidents of prison life." *Wilkinson*, 545 U.S. at 223. Nevertheless, in *Wilkinson*, the Supreme Court held that the conditions of the Ohio State Penitentiary ("OSP") "impose[d] an atypical and significant

hardship under any plausible baseline." *Id.* at 223. The Supreme Court's liberty interest analysis went as follows:

> For an inmate placed in OSP, almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context.

*Id.* at 223-24 (citations omitted).

In contrast, in *Beverati*, the Fourth Circuit found that the *Sandin* standard was not met. Thus, the plaintiff inmates did not possess a liberty interest in being free from administrative segregation. 120 F.3d at 504. In that case, the inmates asserted that their cells were "infested with vermin," "smeared with human feces," and "flooded with water." *Id.* The inmates also complained their cells were "unbearably hot;" their food was cold and served in small portions; they did not receive clean clothing, linen, or bedding as required by prison regulations; they were only permitted to leave their cells three to four times per week; they received no outside recreation time; and there were no educational or religious services provided to them. *Id.* In affirming the district court's grant of summary judgment to the defendant prison officials, the Fourth Circuit concluded that "although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.*

Using the baseline set in *Beverati* and viewing the evidence in the light most favorable to Hillberry, the undersigned **FINDS** that Hillberry does not allege conditions of confinement in administrative segregation that satisfy the standard set forth in *Sandin*. Most of the conditions that Hillberry cites in support of his petition are hypothetical and may never occur. (*See* ECF No. 14 at 6) (Hillberry describing what he believes will happen *if* he is placed on a "behavioral management program"). Furthermore, while Hillberry insists that he has been "sprayed with chemical agents," he also states that this was "a punishment." (*Id.* at 5). Hillberry has not explained whether the punishment was unjustified or disproportionate and what "chemical agents" were used. Additionally, the conditions alleged by Hillberry do not come close to equaling the nature of those described in *Beverati*, where the Fourth Circuit held that the inmates' claims were insufficient to establish a liberty interest under the due process clause. 120 F.3d at 504; *see Denkenberger v. Ballard*, No. 2:11-cv-00466, 2012 WL 529894, at *4 (S.D.W.Va. Feb. 17, 2012) ("If the conditions in *Beverati* were not sufficient to implicate a liberty interest, then neither are the allegations contained in [the prisoner's] complaint."). Many of the conditions, including limited recreation facilities and minimal contact with others, are to be expected of solitary confinement.[13] *See Menei v. Rubenstein*, No. 2:11-cv-00967, 2012 WL 4845659, at *4 (S.D.W.Va. Oct. 11, 2012) (rejecting similar due process claim where conditions complained of were "usual aspects of a solitary confinement"); *Denkenberger*, 2012 WL 529894, at *4 (restrictions of segregation, including limitations on "recreation, education, showers, and phone usage" were not atypical).

---

[13] Hillberry has not provided any evidence of what the ordinary incidents of prison life at MOCC entail.

While the conditions in administrative segregation, as described by Hillberry, do not rise to the level of "atypical and significant hardship," the duration of his confinement in that unit is an additional factor to consider. Courts in other circuits have found that a substantial period of confinement in a segregation unit, even without reference to the conditions of confinement, may trigger a cognizable liberty interest. *See, e.g., Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 699 n.4 (7th Cir. 2009) (collecting cases to support proposition). In those cases, a period approaching two years, as Hillberry claims, would necessarily mandate review. The Fourth Circuit has not adopted a bright line rule, but has recognized that the length of time a prisoner is in solitary confinement is one factor to consider in assessing the merits of a constitutional challenge. *See Incumaa v. Stirling*, No. 9:12-cv-3493, 2014 WL 958679, at *10 n.5 (D.S.C. Mar. 11, 2014) ("[N]either the Supreme Court nor the Fourth Circuit has found a liberty interest based solely on the length of confinement in administrative segregation."); *cf. In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999) (recognizing that indefinite duration of administrative segregation was only one factor to consider where prisoners challenged constitutionality of indefinite placement in segregation on Eighth Amendment grounds).

Nevertheless, in this case, Hillberry fails to state a claim based upon the duration of his confinement in administrative segregation because he makes no such claim. Although he mentions in his responsive brief that he has been in segregation since August 2012 without a "review of his status," (ECF No. 13 at 10), he has not **asserted** a constitutional violation arising from the alleged lack of periodic reviews. His petition, affidavit, and statement of disputed factual issues are silent on this matter.

Furthermore, Hillberry has failed to submit any evidence corroborating that periodic reviews have not occurred.[14] According to Section V(B)(4) of WVDOC Policy Directive 326.00, dated April 2008, MOCC is required to perform: "a review of the status of inmates in Administrative Segregation and Special Management by the Classification Committee or other authorized staff group every seven (7) days for the first two (2) months and at least every thirty (30) days thereafter."[15] Section V(B)(5) of the directive further provides: "There shall be a review process used to release an inmate from Administrative Segregation and Special Management." If MOCC has abided by these policy directives, then Hillberry's status has been reevaluated on multiple occasions since his original placement in administrative segregation, and his due process rights may have been fully protected. However, because Hillberry chose not to raise the matter of periodic reevaluations in his petition, this issue is simply not before the Court.[16]

Having concluded that the facts underlying Hillberry's petition are insufficient to create a protected liberty interest under the due process clause, any discussion of the

---

[14] In *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975), the Fourth Circuit recognized that a prisoner's affidavit may be sufficient to create a genuine issue of material fact. As stated above, Hillberry has not included a claim regarding status review in his affidavit.

[15] Policy Directive 326.00 may be accessed at: http://www.wvdoc.com/wvdoc/LinkClick.aspx?fileticket=U2z9QdjfJFU%3D&tabid=104&mid=156.

[16] Even considering the duration of Hillberry's stay in administrative segregation, his claim is not as compelling as the claims asserted in *Beverati* and *Wilkinson*. For one thing, the conditions described by Hillberry are not nearly as bleak as those experienced by the inmates in *Beverati* and *Wilkinson*. In addition, unlike the circumstances in *Wilkinson*, Hillberry's placement in administrative segregation was not indefinite. A document from the initial classification hearing indicated that Hillberry shall remain at MOCC in Quilliams II "until released from segregation," but then explicitly set out various steps that Hillberry could take to improve his classification, including enroll in certain classes and "remain write-up free." (ECF No. 13-1 at 22). Nothing in the record demonstrates whether Hillberry complied with the requirements, or refused to do so, and therefore has remained in administrative segregation for an extended period of time as a direct consequence of his own choices. Also unlike the inmates in *Wilkinson*, Hillberry makes no allegation that his assignment to segregation will affect his ability to obtain parole. In sum, the conditions alleged by Hillberry do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484.

process to which Hillberry was entitled is superfluous. *Wilkinson*, 545 U.S. at 221 ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest . . . ."); *Robinson v. Creasey*, No. 5:07-cv-00347, 2009 WL 1073642, at *4 (S.D.W.Va. Apr. 11, 2009) (recognizing court need not determine whether procedures comported with due process where no liberty interest established). Even so, Hillberry has received much of the process that he was due. In *Wilkinson*, after finding the prisoners possessed a liberty interest in avoiding the "Supermax" conditions at the OSP, the Supreme Court applied the procedural due process balancing test established in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). *Wilkinson*, 545 U.S. at 224-25. The *Mathews* framework mandates consideration of three factors: (1) the private interest affected by the government action; (2) the risk of an erroneous deprivation through the procedures used, and the value of additional or substitute procedural safeguards; and (3) the government's interest. 424 U.S. at 335. Applying that framework to the *Wilkinson* case, the Court concluded that Ohio's policy of providing a brief summary of the factual basis for consideration of OSP placement, allowing the prisoner an opportunity to be heard, and furnishing the prisoner a short statement of reasons for OSP placement satisfied procedural due process requirements.[17] 545 U.S. 225-28.

---

[17] In reaching its holding, the Court distinguished the facts in *Wilkinson* from those in *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). *Wilkinson*, 545 U.S. at 228. In *Wolff*, the Court held that where a prisoner faces a disciplinary proceeding that may result in the loss of good-time credits, the prisoner is entitled to written notice of the claimed rule violation, a written statement by the decision maker after the conclusion of the proceeding, the right to call witnesses and present documentary evidence at a hearing when doing so "will not be unduly hazardous to institutional safety or correctional goals," the right to assistance from a fellow prisoner or prison staff where the charged prisoner is illiterate or the issues are complex, and a sufficiently impartial decision maker. 418 U.S. at 564-71. The Court stopped short of requiring cross-examination. *Id.* at 567-68. Here, Hillberry has not alleged that placement in administrative segregation affects the accumulation of good-time credits. Furthermore, the type of administrative action in this case is more similar to that which occurred in *Wilkinson*.

Here, Hillberry's private interest is less weighty than the prisoners' interest in *Wilkinson* given the difference in conditions between administrative segregation at MOCC and the "Supermax" conditions at the OSP. More importantly, Hillberry has not disputed that he was provided all of the procedural protections held to satisfy procedural due process in *Wilkinson*. (*See* ECF No. 13-1 at 6; ECF No. 14 at 3). Hillberry was provided with a brief summary of the factual basis for his placement in administrative segregation before his hearing, he was afforded the opportunity to be heard at the hearing,[18] and he was given a completed hearing recommendation form after his hearing. Hillberry relies on prison officials' alleged failure to follow Policy Directive 326.01 to support his due process position. However, that policy directive does not create constitutionally required due process protections. *See Taylor v. Ballard*, No. 2:09-cv-78, 2010 WL 703112 (N.D.W.Va. Feb. 25, 2010) (recognizing that WVDOC policy directives do not create constitutional requirements) (citing *Sandin*, 515 U.S. at 583). Furthermore, none of the cases cited by Hillberry require additional protections. For example, Hillberry cites *Clark v. Brewer*, 776 F.2d 226 (8th Cir. 1985). Yet, in that case, the Eighth Circuit stated its "general disagreement" with the district court's conclusion that inmates placed in a "close management" program should be allowed to call witnesses at periodic review hearings. *Id.* at 235. Hillberry also relies on *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir. 1986). Again, this case undermines Hillberry's position as the Ninth Circuit held "that the due process clause does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Id.* at 1100-01.

---

[18] An opportunity to be heard at the hearing does not include the ability to call witnesses. *Wilkinson*, 545 U.S. at 228; *Taylor v. Ballard*, No. 2:09-cv-78, 2010 WL 703112 (N.D. W. Va. Feb. 25, 2010).

Having thoroughly considered the matter, the undersigned **PROPOSES** that the District Court **FIND** that no genuine issue of material fact exists and that Hillberry's due process claim fails. Accordingly, the undersigned **RECOMMENDS** that Respondent be granted summary judgment.

## IV.   <u>Proposal and Recommendation</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows:

1. Respondent's Motion for Summary Judgment (ECF No. 10) be **GRANTED**;

2. Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) be **DENIED**; and

3. That this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S.

140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Johnston, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and any counsel of record.

**FILED:** November 13, 2014

Cheryl A. Eifert
United States Magistrate Judge